# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

VICTORIA VESTAL and EMMANUEL VESTAL,

      Plaintiffs,

v.                                       Case No: 6:17-cv-1567-Orl-40KRS

FIRST RECOVERY GROUP, LLC and ARMANDO PAYAS,

      Defendants.
_____/

## **ORDER**

This cause comes before the Court without oral argument on the following:

1. Plaintiff's Motion for Remand and Memorandum of Law (Doc. 8), filed September 26, 2017;

2. Defendant First Recovery Group, LLC's Response to Plaintiff's Motion for Remand (Doc. 14), filed October 10, 2017;

3. Defendant First Recovery Group, LLC's Motion to Dismiss (Doc. 3), filed September 5, 2017;

4. Plaintiff's Response to Defendant's Motion to Dismiss (Doc. 27), filed November 6, 2017; and

5. Defendant's Reply in Support of Its Motion to Dismiss (Doc. 35), filed November 27, 2017.

The parties have completed their briefing and the Court is otherwise fully advised on the premises. For the following reasons, Plaintiff's Motion for Remand is due to be denied, and Defendant's Motion to Dismiss is due to be granted in part.

I. **BACKGROUND**

The present lawsuit relates to an earlier medical malpractice action brought by VEV ("Plaintiff"), a minor, by and through Victoria Vestal and Emmanel Vestal, VEV's parents. On February 22, 2013, VEV was injured in an automobile accident. (Doc. 2, ¶ 8). The complaint alleges that VEV's healthcare providers were negligent, resulting in severe injuries. (*Id.* ¶ 9). Plaintiff then filed a medical malpractice suit. (*Id.* ¶ 12). Defendant, Armando Payas ("Payas"), was appointed guardian ad litem to VEV and was a named defendant in the malpractice case. (*Id.* ¶ 7). Plaintiff alleges Payas is an attorney licensed in Florida, and maintains a regular office in Florida. (*Id.* ¶¶ 5–6).

On February 7, 2017, Defendant First Recovery Group, LLC ("FRG")[1] advised Plaintiff it was asserting a $14,089.79 subrogation lien in connection with the suit. (*Id.* ¶ 11). In reliance of FRG's representation, Plaintiff settled the medical malpractice lawsuit; the settlement was approved by a court on May 12, 2017. (*Id.* ¶¶ 12, 14). Subsequently, on July 18, 2017, FRG advised Plaintiff that it was actually asserting a $144,861.95 subrogation lien. (*Id.* ¶ 15).

This suit followed. On July 26, 2017, Plaintiff filed a state court complaint seeking a declaratory judgment that FRG is only entitled to recover $14,089.79 for Medicaid claims paid on VEV's behalf. (*Id.* ¶ 19). On August 29, 2017, FRG removed to this Court on the basis of diversity jurisdiction. (Doc. 1). In the Notice of Removal, FRG asserted that Payas is not a proper defendant, and that the parties are completely diverse if Payas is properly disregarded. (*Id.* ¶ 11).

---

[1] FRG was retained by WellCare, a Medicaid plan, to represent it in connection with WellCare's rights to subrogation or reimbursement in connection to Medicaid claims paid on behalf of VEV. (*Id.* ¶ 4).

## II. DISCUSSION

### A. Plaintiff's Motion for Remand

Plaintiff now moves to remand to state court, arguing that removal was improper for two reasons: (1) the parties are not completely diverse, and (2) Plaintiff failed to obtain consent from all Defendants to remove. (*Id.* ¶¶ 18, 37). Plaintiff contends that Payas is a proper defendant in this suit, thus complete diversity of citizenship is absent. (*Id.* ¶¶ 20, 22, 32, 35). Moreover, because Payas was a proper defendant, FRG was required to obtain Payas' consent as a pre-requisite to removal. (*Id.* ¶¶ 37–39).

Defendant counters that Plaintiff fraudulently joined Payas to defeat diversity jurisdiction. (Doc. 14, ¶ 6). Defendant avers that no "bona fide controversy" exists between VEV and Payas, VEV's guardian ad litem, thus barring Payas from being joined as a defendant. (*Id.*).

#### 1. Fraudulent Joinder

Title 28 U.S.C. § 1441(a) authorizes a defendant to remove a civil action from state court to federal court where the controversy lies within the federal court's original jurisdiction. When a case is removed from state court, the removing party bears the burden of establishing federal subject matter jurisdiction by a preponderance of the evidence. *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) (per curiam).

Because removal from state court constitutes an infringement upon state sovereignty, the procedural requirements for removal must be strictly construed, and all doubts about the propriety of removal must be resolved in favor of remand. *Russell Corp. v. Am. Home Assurance Co.*, 264 F.3d 1040, 1049–50 (11th Cir. 2001).

FRG invokes this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. Section 1332 confers jurisdiction to the district courts over "all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between citizens of different States." 28 U.S.C. § 1332(a)(1). Diversity jurisdiction requires that all plaintiffs be diverse from all defendants. *U. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 412 (11th Cir. 1999).

Under the fraudulent joinder doctrine, a facially non-diverse action "may nevertheless be removable if the joinder of the non-diverse party . . . were fraudulent." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d, 1284, 1287 (11th Cir. 1998). "In a removal case alleging fraudulent joinder, the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). Fraudulent joinder determinations depend upon the plaintiff's pleadings. *Id.* District courts must view factual allegations in the light most favorable to the plaintiff and uncertainties are to be resolved in the plaintiff's favor. *Id.*

FRG argues there is no possibility that Plaintiff can establish a cause of action against the non-diverse defendant, Payas, therefore his joinder was fraudulent. A "plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." *Triggs*, 154 F.3d at 1287. A review of the Complaint fails to disclose any facially colorable claims against Payas. (Doc. 2). The paragraphs mentioning Payas set forth his background information (*see* Doc. 2, ¶¶ 5–7, 13) and indicate that his and Plaintiff's

interests are aligned.[2] There is no indication that Plaintiff is pursuing any claims, or a judgment, against Payas. The Court is therefore satisfied that "there is no possibility" of Plaintiff establishing a cause of action against Payas, rendering his joinder fraudulent. *See Pacheco de Perez*, 139 F.3d 1380.

Generally, all defendants must consent to remove an action to federal court. However, "[a] fraudulently joined defendant need not consent to removal." *Restivo v. Bank of Am. Corp.*, 618 F. App'x 537, 540 n.5 (11th Cir. 2015). Such a requirement would be nonsensical. Accordingly, Defendant's removal was proper, and Plaintiff's Motion to Remand is denied.

**B.  Defendant's Motion to Dismiss**

*1.  Subject Matter Jurisdiction–Statutory Exhaustion Requirement*

FRG first argues that Plaintiff's failure to exhaust administrative remedies in accordance with Florida's Medicaid statute, the Medicaid Third-Party Liability Act ("MTPLA"), deprives this Court of subject matter jurisdiction. (Doc. 3, pp. 7–9).

Challenges to subject matter jurisdiction come in two forms: "facial attacks" and "factual attacks." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). Facial

---

[2] At all times material hereto, in reliance on the amount of the subrogation lien asserted in Defendant, FIRST RECOVERY GOUP, LLC, February 7, 2017 correspondence, Defendant, ARMANDO PAYAS, on behalf of Plaintiffs settled their medical malpractice lawsuit against all healthcare providers who rendered negligent care and treatment to [VEV].

. . .

At all times material hereto, Plaintiffs and ARMANDO PAYAS relied on the representation by Defendant, FIRST RECOVERY GROUP, LLC, on February 7, 2017.

(Doc. 2, ¶¶ 12, 15).

5

attacks only require the court to determine if the plaintiff has alleged a sufficient basis for subject matter jurisdiction. *Id.* at 1529. As such, the allegations within the complaint are assumed true for the purpose of the motion. *Id.* On the other hand, factual attacks challenge the existence of subject matter jurisdiction irrespective of what the complaint alleges. *Garcia v. Copenhaver, Bell & Assocs., M.D's, P.A.*, 104 F.3d 1256, 1260–61 (11th Cir. 1997). Accordingly, courts may consider information outside of the pleadings—including testimony, affidavits, and other evidence—and may make factual findings to resolve the motion. *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). Subject matter jurisdiction must exist at the time the action is commenced, and the party who invokes a federal court's subject matter jurisdiction bears the burden of establishing the propriety of exercising that jurisdiction. *See Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974).[3]

Although FRG frames its failure-to-exhaust argument in terms of subject matter jurisdiction, it is unclear whether the exhaustion requirement is a jurisdictional requirement, or merely a procedural "claim-processing rule[]." *See Santiago-Lugo v. Warden*, 785 F.3d 467, 471–73 (11th Cir. 2015). Because the same result is reached under either characterization, the Court will assume without deciding that FRG's subject matter jurisdiction characterization is correct.

According to FRG, the MTPLA prescribes an administrative appeals process that must be exhausted before filing a lawsuit, (Doc. 3, pp. 8–9), and Plaintiff's failure to follow that procedure before bringing this action deprives the Court of jurisdiction. (*Id.* at 9–11).

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit that were handed down prior to October 1, 1981.

6

In response, Plaintiff avers that an earlier version of the MTPLA applies which does not require exhaustion of administrative remedies. (Doc. 27, ¶¶ 22–26). Plaintiff asserts that, because the lien at issue attached "on or before March 15, 2013," more than three months before the amended MTPLA went into effect, the pre-amendment MTPLA governs this case. (*Id.* ¶¶ 9–10).

### a. Federal Law

The Medicaid program provides federal and state funding to pay healthcare costs for individuals who cannot afford it. *Ark. Dep't of Health & Human Servs. v. Ahlborn*, 547 U.S. 268, 275 (2006). All fifty states participate in Medicaid. *Id.* The federal government pays a substantial portion of Medicaid costs. *Id.* In return, the states pay a portion and must comply with certain statutory requirements. *Id.* One such requirement is that states "seek reimbursement for medical expenses incurred on behalf of beneficiaries who later recover from third-party tortfeasors." *Wos v. E.M.A. ex rel. Johnson*, 568 U.S. 627, 633 (2013); *Ahlborn*, 547 U.S. at 275.

The U.S. Code imposes additional obligations:

States must require beneficiaries "to assign the State any rights . . . to support (specified as support for the purpose of medical care by a court or administrative order) and to payment for medical care from any third party." States receiving Medicaid must also

> "ha[ve] in effect laws under which, to the extent that payment has been made under the State plan for medical assistance for health care items or services furnished to an individual, the State is considered to have acquired the rights of such individual to payment by any other party for such health care items or services."

*Wos*, 568 U.S. at 633 (first quoting 42 U.S.C. § 1396k(a)(1)(A), then quoting 42 U.S.C. § 1396a(a)(25)(H)).

7

### b. Florida Law

The MTPLA provides that Medicaid is to be "the payor of last resort," and, if a liable third-party makes payments to a beneficiary for expenses paid through Medicaid, then Medicaid is to be repaid from the proceeds of the third-party payment(s). Fla. Stat. § 409.910(1). Section 409.910(6) establishes the mechanisms by which the State of Florida gains rights to third-party benefits. Florida is entitled to an automatic lien for the amount of Medicaid assistance to a beneficiary as a result of "any covered injury or illness for which a third party is or may be liable . . . ." Fla. Stat. § 409.910(6)(c). This lien attaches to the "collateral," which includes various recovery rights against third parties as well as judgments, settlements, and proceeds. *Id.* § 409.901(7).[4] The State's "lien attaches [and perfects] automatically when a recipient first receives treatment" that is paid through Medicaid. *Id.* § 409.910(6)(c)(1).

---

[4] Fla. Stat. § 409.901(7) is comprised of three subsections, each describing property that meet the definition of "collateral." They are:

> (a) Any and all causes of action, suits, claims, counterclaims, and demands that accrue to the recipient or to the recipient's legal representative, related to any covered injury, illness, or necessary medical care, goods, or services that necessitated that Medicaid provide medical assistance.
> (b) All judgments, settlements, and settlement agreements rendered or entered into and related to such causes of action, suits, claims, counterclaims, demands, or judgments.
> (c) Proceeds, as defined in this section.

*Id.* "Proceeds means whatever is received upon the sale, exchange, collection, or other disposition of the collateral or proceeds thereon and includes insurance payable by reason of loss or damage to the collateral or proceeds." *Id.* § 409.901(26).

The amount the State may recover from a Medicaid beneficiary for third-party payments is determined by formula. *Id.* § 409.910(11)(f). Section 409.910(17)(b) prescribes an administrative procedure for challenging § 409.910(11)(f) calculations:

> If *federal law* limits the agency to reimbursement from the recovered medical expense damages, a recipient, or his or her legal representative, may contest the amount designated as recovered medical expense damages payable to the agency *pursuant to the formula specified in paragraph (11)(f)* by filing a petition under chapter 120 within 21 days after the date of payment of funds to the agency or after the date of placing the full amount of the third-party benefits in the trust account for the benefit of the agency pursuant to paragraph (a). The petition shall be filed with the Division of Administrative Hearings.

*Id.* § 409.910(17)(b) (emphasis added). That administrative process "is the exclusive method for challenging" the State's reimbursement calculation. *Id.*

Fla. Stat. § 409.910(17)(b) was given effect on July 1, 2013. 2013 Fla. Sess. Law Serv. 150 (West). The subsection was enacted to comply with the U.S. Supreme Court's recent decision in *Wos v. E.M.A. ex rel. Johnson*, 568 U.S. 627 (2013),[5] which "casts doubt" on the validity of Florida's Medicaid reimbursement calculation provision, § 409.910(11)(f). Fla. Staff Analysis, H.B. 939, at 7–8 (June 10, 2013). The administrative hearing procedure "effectively mak[es] the [§ 409.910(11)(f)] statutory presumption rebuttable." *Id.* at 8.

---

[5] In *Wos*, the Supreme Court struck down a North Carolina statute that required "up to one-third of any damages recovered by a beneficiary for a tortious injury be paid to the State to reimburse it for" Medicaid payments it made for treatment of the injury. 568 U.S. at 636. The Court held that the state law was pre-empted by the federal anti-lien law, 42 U.S.C. § 1396p(a)(1), which prevents a State from recovering any portion of a Medicaid beneficiary's judgment or settlement not "designated as payment[] for medical care." *Id.* at 630, 636 (quoting *Ahlborn*, 547 U.S. at 284).

### c. Present Litigation

The Court first addresses whether the pre- or post-amendment MTPLA applies to this case. The parties dispute which version of the law applies to the instant case, however, the Court is satisfied that the post-amendment law binds.

This very issue was addressed in *Suarez v. Port Charlotte HMA, LLC*, 171 So. 3d 740 (Fla. 2d D.C.A. 2015) (per curiam). The *Suarez* court found that the (post-amendment) Fla. Stat. § 409.910(17)(b) administrative appeal procedure applied in a case where a medical malpractice suit—which was filed before the amendment, and was predicated on pre-amendment injuries and Medicaid payments—was settled after the amended MTPLA was enacted. *Id.*[6] In that case, Florida's Second District Court of Appeals held that "the recovery of third-party benefits . . . causes [the State's] right to recovery to vest." *Id.* at 742. Because the State's right to recovery vested *after* the amendment, the post-amendment Medicaid statute applied. *Id.*

According to the Complaint, Plaintiff's medical malpractice settlement was approved on May 12, 2017, nearly four years after the MTPLA's amendment. (Doc. 2, ¶ 14). Therefore, the post-amendment version of the MTPLA applies. *See Suarez*, 171 So. 3d at 742.

The Court now turns to whether Plaintiff was required to exhaust the Fla. Stat. § 409.910(17)(b) procedural appeals before filing suit, as FRG contends. (Doc. 3, p. 10).

FRG cites a number of cases, none of which involve the MTPLA, for the proposition that disputes regarding subrogation liens are subject to administrative exhaustion. (Doc.

---

[6]  "Because the settlement . . . was not reached until 2014, [the State] had no right to recovery until that time. Accordingly, the 2013 version of this statute controls." *Id.*

3, pp. 7–8). The Court is unpersuaded by these cases. Defendant first cites a Fifth Circuit Court of Appeals case that deals with claims arising under the Employee Retirement Income Security Act, not Medicaid, and is therefore inapposite. *Arana v. Ochsner Health Plan*, 338 F.3d 433 (5th Cir. 2003). The following three cases cited by Defendant are inapposite for the same reasons. *Mallon v. Trover Sols. Inc.*, 613 F. App'x 142 (3d Cir. 2015); *Singh v. Prudential Health Care Plan, Inc.*, 335 F.3d 278 (4th Cir. 2003); *Barnes v. Humana, Inc.*, No. 4:13–cv–0068–DGK, 2013 WL 4434391 (W.D. Mo. Aug. 14, 2013). FRG next cites several cases involving Medicare claims for a similar proposition. (Doc. 3, p. 8). Likewise, these cases are unpersuasive because the federal statute prescribing administrative remedies for Medicare claims is much broader than Fla. Stat. § 409.910(17)(b). *Einhorn v. CarePlus Health Plans, Inc.*, 43 F. Supp. 3d 1329, 1331–32 (S.D. Fla. 2014).

FRG next argues that Plaintiff's challenge to the amount of the Medicaid lien requires administrative exhaustion under the MTPLA based on (i) the text of § 409.910(17)(b), and (ii) the holdings in a Florida District Court of Appeals case and a Department of Administrative Hearings Order.[7] (Doc. 3, p. 4).

The Court's MTPLA analysis begins with the text of § 409.910(17)(b). "The polestar of a statutory construction analysis is legislative intent." *W. Fla. Reg'l Med. Ctr., Inc. v. See*, 79 So. 3d 1, 8–9 (Fla. 2012). Courts must first look to the plain meaning of a statute to discern legislative intent. *Id.* If the meaning of the statute is clear and unambiguous, the court must apply that clear meaning. *Id.* If a statute is ambiguous, then courts apply

---

[7] The Department of Administrative Hearings is the administrative body tasked with adjudicating administrative appeals. Fla. Stat. § 409.910(17)(b).

11

the rules of statutory construction, "which may include the examination of a statute's legislative history and the purpose behind its enactment." *Id.*

Fla. Stat. § 409.910(17)(b) establishes an administrative appeals process that allows individuals to challenge State reimbursement requests arrived at through § 409.910(11)(f)'s "formula-based allocation." *Gallardo ex rel. Vassallo v. Dudek*, 263 F. Supp. 3d 1247, 1251; *see also supra*. Specifically, it was aimed at bringing the MTPLA into compliance with *Wos v. E.M.A.* The *Wos* Court invalidated a North Carolina Medicaid reimbursement statute because it authorized the State to recover third-party payments, portions of which were immune from reimbursement under the federal anti-lien law. 568 U.S. at 630, 636. Consistent with this holding, the MTPLA provision outlining the newly-created reimbursement administrative appeal procedure begins: "If *federal law* limits the agency to reimbursement . . . ." Fla. Stat. § 409.910(17)(b). (emphasis added) Further, the provision explicitly authorizes challenges to "the amount designated as recovered medical expense damages payable to the agency pursuant to the *formula specified in paragraph (11)(f)*. *Id.* (emphasis added). This statute authorizes appeals of *calculations* made by the State of Florida under § 409.910(11)(f) on the grounds that the amounts sought violated the *federal* anti-lien law. As noted above, the legislative history of Fla. Stat. § 409.910(17)(b) reinforces this conclusion. Fla. Staff Analysis, H.B. 939, at 7–8 (June 10, 2013).

The present declaratory judgment action does not implicate MTPLA's administrative exhaustion requirement because it does not involve a challenge to a Medicaid reimbursement *calculation*. Plaintiff's suit is a collateral attack on a lien asserted by FRG (on behalf of WellCare), and is premised on a reliance theory—to wit, because

12

Plaintiff relied on FRG's February 7, 2017, representation as to the lien amount in settlement negotiations, FRG and WellCare are not entitled to reimbursement exceeding the amount initially requested. Both the plain meaning of § 409.910(17)(b) and the legislative history buttress this conclusion. Plaintiff was therefore not required to exhaust administrative appeals pursuant to § 409.901(17)(b).

Neither opinion cited by Plaintiff on this issue affect the foregoing analysis. The Division of Administrative Hearings Order merely applied the statutory framework to a Medicaid beneficiary's challenge of a Fla. Stat. § 409.910 (11)(f) reimbursement calculation. *Delgado v. Agency for Health Care Admin.*, No. 17-2084MTR, 2016 WL 7047518 (Div. of Admin. Hearings Nov. 30, 2016). Similarly, the Florida District Court of Appeals decision cited involved another straightforward challenge to a § 409.910(11)(f) calculation. *Willoughby v. Agency for Health Care Admin.*, 212 So. 3d 516 (Fla. 2d D.C.A. 2017). Neither decision supports the proposition that a collateral attack to a Medicaid reimbursement lien based on state law implicates Fla. Stat. § 409.910(17)(b)'s administrative exhaustion requirement.

### d. Administrative Appeal Under WellCare's Staywell Plan

FRG further argues the Complaint should be dismissed because Plaintiff failed to exhaust administrative appeals mandated by WellCare's Staywell Plan. (Doc. 3, p. 10). In support, FRG counsels that the "Court may consider WellCare's Staywell Florida Medicaid Member Handbook because the document is central to the claim and its authenticity is not challenged." (Doc. 3, p. 10 (citing *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)). However, the WellCare StayWell Florida Medicaid Member Handbook

is not central to Plaintiff's claim, and therefore not within the Court's scope of review at this stage.

### 2. *Stating a Claim–FRG as an Improper Defendant*

FRG argues that Plaintiff's Complaint should be dismissed for failure to state a claim because FRG is an improper defendant. (Doc. 3, p. 11). A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. In order to survive the motion, the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the plaintiff alleges enough facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The mere recitation of the elements of a claim is not enough, and the district court need not give any credence to legal conclusions that are unsupported by sufficient factual material. *Id.* District courts must accept all well-pleaded allegations within the complaint and any documents attached thereto as true and must read the complaint in the light most favorable to the plaintiff. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam).

The Complaint alleges FRG "was and is *retained by* WellCare, a Medicaid plan, to represent WellCare in connection with their rights of subrogation and/or recovery regarding medical claims paid on behalf of" Plaintiff. (Doc. 2, ¶ 4 (emphasis added)). Because the right of repayment at issue in this suit "belongs to WellCare, a Medicaid plan," FRG contends that Plaintiff failed to state a claim against FRG or demonstrate an adverse relationship between FRG and Plaintiff. (Doc. 3, p. 12). Plaintiff responds that FRG is a properly-named Defendant, as evidenced by FRG's representations that they

were representing WellCare in connection with their subrogation rights and FRG's directions that all correspondence regarding the disputed lien be sent solely to FRG. (Doc. 27, ¶ 48).

Declaratory judgment is proper only where an actual controversy is before the court. The Florida Supreme Court has held that all "antagonistic and adverse interest[s]" must be present in an action as a precondition to the entry of declaratory judgment. *May v. Holley*, 59 So. 2d 636, 639 (Fla. 1952).[8]

The Court agrees that FRG is the improper Defendant in this action. The Complaint alleges that FRG acted as an agent to represent WellCare in connection with subrogation and/or lien rights belonging to WellCare. FRG has no legal claim to the funds purportedly subject to WellCare's lien. Therefore, in this action seeking a declaration as to the amount of *WellCare's* statutory lien, the proper Defendant is Wellcare, not FRG. That FRG acted as WellCare's agent does not disturb the conclusion that Plaintiff and WellCare are the parties with antagonistic legal interests.

---

[8] In a decision interpreting an earlier version of Florida's declaratory judgment statute, the court set forth the elements that must be present to demonstrate that the action is "judicial in nature" and that a declaratory judgment is within the constitutional authority of the court. Importantly, the court stated:

> Before any proceeding for declaratory relief should be entertained it should be clearly made to appear . . . that there is some person or persons who have, or reasonably may have an actual, present, adverse[,] and antagonistic interest in the subject matter, either in fact or law; that the antagonistic and adverse interests *are all before the court* by proper process or class representation and that the relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity.

*Id.* (emphasis added).

## III. CONCLUSION

For the aforementioned reasons, it is **ORDERED AND ADJUDGED** that:

1. Plaintiff's Motion for Remand and Memorandum of Law (Doc. 8) is **DENIED**;

2. Defendant's Motion to Dismiss (Doc. 3) is **GRANTED IN PART**.

3. The Complaint (Doc. 2) is **DISMISSED WITHOUT PREJUDICE**. Plaintiff has **fourteen (14) days** from the date of this Order to file an Amended Complaint consistent with this Order.

**DONE AND ORDERED** in Orlando, Florida, on February 12, 2018.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties